UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PETER W.,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

Case No.: 25-cv-1709-AGS-DDL

**REPORT AND RECOMMENDATION FOR ORDER AFFIRMING COMMISSIONER'S DECISION AND ENTERING JUDGMENT IN COMMISSIONER'S FAVOR**

The undersigned respectfully submits this Report & Recommendation to United States District Judge Andrew G. Schopler pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1.c. Plaintiff Peter W. ("Plaintiff") appeals the Commissioner's denial of his application for social security benefits pursuant to 42 U.S.C. § 405(g) and requests remand to the Social Security Administration for an award of benefits or, alternatively, further proceedings. For the reasons stated below, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

/ / /

/ / /

/ / /

/ / /

# I.

# BACKGROUND

## A. Plaintiff's Application for Disability Benefits

On June 6, 2022,[1] Plaintiff applied for a period of disability and disability insurance benefits under Titles II and XVIII of the Social Security Act ("the Act"). Certified Administrative Record ("AR") [Dkt. No. 8] at 221-22. Plaintiff alleges that he has been unable to work since July 1, 2016, due to his disabling impairments. *Id.* Plaintiff's application was denied at the initial stage and upon reconsideration. *Id.* at 85, 98. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which took place on October 30, 2023, before ALJ Howard Treblin. *Id.* at 10, 61-84. The ALJ held a second hearing on October 2, 2024 after obtaining additional evidence which warranted medical testimony. *Id.* at 10, 44-60. Plaintiff appeared with counsel and testified at both hearings. *See id.* at 44-84. Vocational expert Nelly Kastell testified at the October 30, 2023 hearing. *See id.* at 61-84. Medical expert Dr. Michael Lace and vocational expert Joseph Young testified at the October 2, 2024 hearing. *See id.* at 44-60.

The ALJ issued an unfavorable opinion on December 18, 2024, concluding that Plaintiff "was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2021, the last date insured." *Id.* at 27. On June 6, 2025, the Appeals Council denied review, and the ALJ's decision became final. *Id.* at 1-3.

## B. Summary of the ALJ's Findings

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. 42 U.S.C. § 423(d). To qualify for benefits, an individual must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(A). The applicant bears

---

[1] The ALJ's opinion states that Plaintiff applied on June 3, 2022 [AR at 10] but Plaintiff's Application Summary for Disability Benefits states that he applied on June 6, 2022.

the burden of establishing that they were either "permanently disabled or subject to a condition which became so severe as to disable [them] prior to the date upon which [their] disability insured status expired," in this case being December 31, 2021. *Walls v. Astrue*, 282 F. App'x 568, 570 (9th Cir. 2008).

The Administration employs a sequential five-step evaluation to make this determination.[2] The ALJ followed this five-step process in adjudicating Plaintiff's disability claim. *See generally* AR at 12-27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date, July 1, 2016, through his date last insured, December 31, 2021. *Id.* at 12.

At step two, the ALJ found Plaintiff had the following severe impairments through the date last insured: "right elbow lateral epicondylitis; right elbow cubital tunnel syndrome status post right elbow lateral epicondylar debridement and release surgery; attention deficit hyperactivity disorder (ADHD), major depressive disorder, bipolar disorder, and generalized anxiety disorder." *Id.* at 13. Plaintiff claimed other impairments that the ALJ found were non-severe: hypertension, gastroesophageal reflux disease, sinusitis, mild methamphetamine use disorder in sustained remission, and obesity. *Id.* Plaintiff also claimed a back impairment, which the ALJ found was not a medically-determinable impairment through the date last insured. *Id.* at 14.

At step three, the ALJ found that through the date last insured, Plaintiff's impairments or combination of impairments did not meet or medically equal the severity

---

[2] The ALJ must determine the following: at step one, whether the claimant is engaged in substantial gainful activity; at step two, whether the claimant suffers from a severe impairment within the meaning of the regulations; at step three (if the claimant suffers from a severe impairment), whether the impairment meets or is medically equal to one of the impairments identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether, given the RFC, the claimant can perform his or her past relevant work; at step five, whether the claimant can make an adjustment to other work based on his or her RFC. If the claimant is found not disabled at any step, the analysis does not proceed. See 20 C.F.R. § 404.1520.

of a listed impairment. *Id.* at 14.

At step four, the ALJ determined that despite his impairments, through his date last insured Plaintiff had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels" subject to the following "non-exertional limitations":

> The claimant can occasionally lift and or carry up to 100 pounds and frequently lift and/or carry up to 20 pounds. The claimant can sit for 4 hours at a time, stand for 4 hours at a time and walk for 4 hours at a time. The claimant can sit for 8 hours in an 8-hour workday; walk for 8 hours in an 8-hour workday; and stand for 8 hours in an 8-hour workday. The claimant can continuously use his hands for all manipulation including reaching in all directions, and handling, fingering, and feeling, pushing and pulling. The claimant can continuously use foot control bilaterally. The claimant can continuously perform postural functions including climbing ramps, stairs, ladders, ropes and scaffolds, and the ability to balance, stoop, kneel, crouch and crawl. The claimant can have continuous exposure to environmental elements such as extreme cold; extreme heat; wetness; humidity; noise; vibration; fumes, odors, dusts, gases, poor ventilation, etc.; hazards and operating a motor vehicle. The claimant can be exposed to very loud noise. Cognitively, the claimant can perform unskilled work with daily work quotas, but no fast-paced or assembly line work.

*Id.* at 18.

In formulating the foregoing RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

Regarding Plaintiff's physical limitations, the ALJ considered Plaintiff's subjective testimony regarding his abilities, which primarily concerned Plaintiff's right arm. *Id.* at 19. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." *Id.* at 19. In making this determination, the ALJ considered medical records which noted improvements in Plaintiff's mobility and strength following two surgeries on his right arm and the lack of ongoing treatment during the alleged period of disability. *Id.* at 19-20. The ALJ concluded that "the limitation to frequently lifting and carrying 20 pounds adequately accounts for the claimant's right elbow lateral epicondylitis and right elbow cubital tunnel syndrome status post right elbow lateral epicondylar debridement and release surgery." *Id.*

Regarding Plaintiff's mental limitations, the ALJ stated that the RFC "includes mental limitations to address the claimant's ADHD, major depressive disorder, generalized anxiety disorder, [and] bipolar disorder." *Id.* The ALJ considered Plaintiff's testimony that he has difficulty staying focused, remembering things, and maintaining a routine, and that he gets anxious around people. *Id.* at 19. The ALJ found that "medical evidence does not support greater limitations in the residual functional capacity" because of medical treatment records that reflected emotional stability, intact memory and concentration, and low to average intellectual functioning. *Id.* at 21. Additionally, the ALJ considered Plaintiff's testimony that he was able to care for himself, drive a car, and coach youth football. *Id.* at 22.

The ALJ determined that Plaintiff has no past relevant work. *Id.* at 26. At Step Five, the ALJ concluded that "based on the testimony of the vocational expert…through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." *Id.* at 27. Specifically, the vocational expert testified that an individual with Plaintiff's age, education, work experience, and RFC could work as a dishwasher, store laborer, or commercial cleaner. *Id.*

Based on the five factors above, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 1, 2016, the alleged onset date, through December 31, 2021, the date last insured. *Id.*

## II.

## ISSUES PRESENTED

Plaintiff identifies four issues on appeal, as follows:

1) Whether the ALJ met his burden of proof at Step Five where the jobs exceed the RFC;
2) Whether the ALJ provided a mental residual functional capacity finding in accordance with SSR 85-16;
3) Whether the ALJ addressed the combination of impairments in the RFC;
4) Whether the ALJ provided clear and convincing reasons to disregard Mr. Weinert's statements.

Dkt. No. 10 at 7.

## III.

## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023). The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id*. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id*. The Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. If the evidence is susceptible of more than one rational interpretation, the Court must uphold the ALJ's decision. *See id*. at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the

ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

**IV.**

**DISCUSSION**

**A. Plaintiff Has Not Demonstrated Harmful Error**

With the foregoing legal standards in mind, the Court addresses each of the disputed issues above. The Court will first address the issues related to the ALJ's formation of the RFC at Step Four, and then will address the Step Five issue.

**1. Mental residual functional capacity**

Plaintiff argues that the ALJ failed to properly capture Plaintiff's mental limitations in the RFC as required by 20 C.F.R. §1520(a). Dkt. No. 10 at 8. Specifically, Plaintiff asserts that the RFC does not address his moderate limitations in concentration, persistence or pace, as required by *Stubbs-Danielson v. Astrue*, 529 F.3d 1169 (9th Cir. 2008). The RFC limits Plaintiff to "unskilled work with daily work quotas, but no fast-paced or assembly line work." AR at 18. Plaintiff asserts that the ALJ failed to discuss "the relationship between unskilled work and concentration, persistence, and pace." Dkt. No. 10 at 8. The Court disagrees.

"[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 529 F.3d at 1174. In *Stubbs-Danielson*, the Ninth Circuit found that the ALJ's RFC adequately captured the claimant's mental limitations. *Id.* Medical experts opined that the claimant had moderate limitations in pace and mild to moderate limitations in other mental functions, but that she could nevertheless "carry out simple tasks," such as housework, shopping, and cooking. *Id.* at

1173. The RFC provided that the claimant could "perform simple, routine, repetitive sedentary work, requiring no interaction with the public." *Id.* The Ninth Circuit found that the ALJ had properly weighed the opinions and translated the limitations into the concrete restriction of simple tasks in the RFC. *Id.*

Here, the ALJ similarly translated Plaintiff's mental limitations into an appropriate concrete restriction in the RFC. The ALJ found that Plaintiff had a mild[3] limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself. AR at 15-17. The ALJ based these determinations on Plaintiff's own testimony, Plaintiff's 2021 psychiatric intake examination, Plaintiff's medical records, and Plaintiff's February 2024 consultative examination. *Id.* For Plaintiff's moderate limitation in concentration, persistence, and pace, the ALJ considered Plaintiff's testimony that he had issues focusing and maintaining a routine and his ADHD diagnosis. *Id.* at 16. The ALJ weighed this evidence against Plaintiff's 2021 psychiatric intake evaluation, which indicated that his concentration was grossly intact, and the positive notes regarding Plaintiff's concentration throughout his medical records. *Id.* Although Plaintiff's concentration was assessed to be "very low" at the February 2024 consultative examination, the ALJ found that in the context of the other medical records, this did not support a finding that Plaintiff had such concentration issues prior to his date last insured, December 31, 2021. *Id.* Additionally, Plaintiff's "very low" concentration score was further offset by Plaintiff's average fund of knowledge score and low-average intellectual functioning score. *Id.* at 17. The ALJ also considered evidence from Plaintiff's daily routines, such as his ability to manage his finances, coach youth

---

[3] The ALJ states both that "[i]n understanding, remembering or applying information, the claimant had a mild limitation," and that "the claimant had more than a mild limitation in understanding, remembering, or applying information as of the date last insured." AR at 15-16.

football, and drive a car without issues in concentration. *Id.*

The ALJ incorporated Plaintiff's moderate limitation in concentration, persistence, and pace in the RFC by limiting him to "unskilled work with daily work quotas, but no fast-paced or assembly line work." *Id.* at 18. These restrictions match the limitations expressed by Dr. Lace at the hearing on October 2, 2024. *Id.* at 46. When asked what functional capabilities or limitations Plaintiff would have in the workplace, Dr. Lace opined that "the only limitation really would fall under concentration, persistence, and pace" and that "based on the record the claimant would be much better suited to a work setting where there are no more than daily work quotas, and where there are no fast-paced production requirements." *Id.* at 49. The ALJ followed up to clarify that "unskilled work would be okay," and Dr. Lace answered affirmatively. *Id.* The RFC is consistent with the restrictions in Dr. Lace's testimony. Just as in *Stubbs-Danielson*, the ALJ "translated [Plaintiff's] condition, include the pace and mental limitations, into the only concrete restrictions available to him." 539 F.3d at 1174. Accordingly, the Court concludes the ALJ's RFC properly incorporated Plaintiff's mental limitations.

**2. <u>Combination of physical and mental impairments</u>**

Plaintiff argues that the ALJ failed to address the combination of his physical and mental impairments, specifically regarding his chronic fatigue and pain. Dkt. No. 10 at 9. *Id.* Plaintiff asserts that his medical records document chronic fatigue beginning in 2020, particularly as noted by psychiatrist Dr. Andres Ricardo Scheeberger, and pain caused by curvature of the cervical spine as documented in records from Kaiser Permanente. *Id.* at 11. However, Plaintiff does not explain how the RFC is deficient as a result of the ALJ's alleged failure to consider chronic fatigue or pain.

As an initial matter, Plaintiff has failed to demonstrate harmful error. Plaintiff does not explain how he believes the RFC would differ had chronic fatigue or pain been properly considered. The court "may not reverse an ALJ's decision on account of an error that is harmless," and "the burden of showing than an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111.

Even looking beyond Plaintiff's failure to meet his burden, the Court finds that the ALJ properly considered both chronic fatigue and pain in formulating the RFC. First, the ALJ did consider Plaintiff's chronic fatigue. Plaintiff's argument relies primarily on the documentation of chronic fatigue in his medical records. Dkt. No. 10 at 10-11. Plaintiff cites medical records where chronic fatigue is listed as an "active problem," but none discuss the condition or its effects on Plaintiff's capabilities in detail. Dkt. No. 10 at 10 (citing AR at 737, 747, 755, 766, 772, 901, 907, 923, 930, 953, 973). Further, the earliest of these records is from December 2020, and the majority are after December 2021. Plaintiff claims that his "comprehensive metabolic blood panel reveals CFS [chronic fatigue syndrome]," but the record shows only that a panel was performed on March 31, 2022, with an associated diagnosis of chronic fatigue, not chronic fatigue syndrome.[4] Dkt. No. 10 at 11; AR at 633. Finally, Plaintiff relies on the opinion of Dr. Scheeberger, a psychiatrist who evaluated Plaintiff on August 25, 2022 and noted that Plaintiff was "suffering from chronic fatigue and an overall sense of lack of motivation without lack of energy." Dkt. No. 10 at 11 (citing AR at 769).

The ALJ considered Plaintiff's subjective account of fatigue, and he concluded that it was not supported by the record. AR at 19. The ALJ found that Plaintiff's "mental health treatment records through December 2021 (i.e. the date last insured) do not make reference to the claimant subjectively reporting or objectively needing 5 to 6 hours or rest during the day" and opined that Plaintiff's chronic fatigue issues may have arisen after his date last

---

[4] Plaintiff argues that the ALJ "was required to address chronic fatigue syndrome," Dkt. No. 10 at 11, but there is no evidence that Plaintiff has been diagnosed with Chronic Fatigue Syndrome. The CDC has a published framework for evaluating and diagnosing Chronic Fatigue Syndrome, which no doctor followed in Plaintiff's case. *Compare Reddick v. Chater,* 157 F.3d 715 (9th Cir. 1998) (finding that a claimant who had been diagnosed with Chronic Fatigue Syndrome following extensive treatment and lab testing was entitled to benefits). Chronic Fatigue Syndrome is "persistent or relapsing fatigue lasting six or more consecutive months" that is "accompanied by symptoms such as body aches, low-grade fevers, memory problems, headaches, and extended flu-like symptoms." *Id.* at 726.

insured. *Id.* at 21. Additionally, the ALJ explained why he found Dr. Scheeberger's opinion unpersuasive, as the opinion was from more than twelve months after Plaintiff's date last insured and lacked support from Plaintiff's preceding mental health records. *Id.* at 24. The Court finds that the ALJ adequately addressed Plaintiff's assertions of chronic fatigue on the existing record.

Second, Plaintiff argues that the ALJ "did not address the functional limitation as to pain in the RFC." Dkt. No. 10 at 12. Plaintiff states that he was diagnosed with "decreased motion in his cervical back due to Dowager's hump with kyphosis chronic trapezius and pain" at a medical visit in August 2015. *Id.* (citing AR at 373). However, the ALJ determined that Plaintiff's "alleged back impairment was not a medically-determinable impairment through the date last insured." AR at 14. In reaching this conclusion, the ALJ considered Plaintiff's treatment at Kaiser Permanente in 2015, where Plaintiff stated that "he had chronic upper back and neck discomfort for the last 3-4 months" and exhibited a decreased range of motion and poor posture. AR at 374. The ALJ found that there were few other records to support Plaintiff's claims of back pain between 2015 and his date last insured, December 31, 2021. AR at 14. Indeed, Dr. Dhokarh's evaluation on April 23, 2021, reported no back pain, no deformities, and a full range of motion. The ALJ is only required to consider medically determinable impairments when formulating the RFC. *See* 20 C.F.R. § 404.1545(a)(2). Therefore, because Plaintiff's back pain was not a medically-determinable impairment, the Court finds Plaintiff has not demonstrated harmful error on the basis of the ALJ's alleged failure to address pain.

Plaintiff also references his major recurrent depression, social difficulties, and migraines. Dkt. No. 10 at 11. Plaintiff does not articulate how the ALJ committed harmful error by failing to consider these factors. *Id.* In support, Plaintiff points only to medical records from March 2008 documenting moderate major recurrent depression, an anxious mood, and headaches. *Id.* (citing AR at 808, 811). The ALJ considered Plaintiff's depression and anxiety, noting the lack of treatment records from the alleged onset date to the date last insured. AR at 16, 20-21. Plaintiff does not offer evidence that migraines

were an issue from the alleged onset date through his date last insured. Accordingly, the Court finds the ALJ committed no harmful error in his consideration of these conditions.

**3. Discounting Plaintiff's statements**

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's testimony. Dkt. No. 10. at 12. Specifically, Plaintiff takes issue with the following "overall finding" by the ALJ:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR at 19. Plaintiff argues that the ALJ "asks the reader to guess where the conflict exists as to [Plaintiff's] statements" and fails to "address chronic fatigue, cervical spine damage, or address pain as discussed above." Dkt. No. 10 at 13. The Court disagrees.

The ALJ "is not required to believe every allegation of disabling pain." *Molina*, 674 F.3d at 1112. However, in the absence of evidence of malingering, an ALJ must offer "specific, clear and convincing reasons" for rejecting a claimant's subjective testimony regarding the limitations caused by his impairment. *See* *__Ferguson v. O'Malley__*, 95 F.4th 1194, 1198 (9th Cir. 2024); *see also Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) ("an adverse credibility finding must be based on clear and convincing reasons"). "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498.

At the October 30, 2023 hearing, Plaintiff provided testimony on his mental and physical limitations. AR at 64-77. In regard to his physical condition, Plaintiff discussed the limited functionality of his right hand, agreeing that his right arm was his biggest problem as far as function in the workplace. *Id.* at 67, 76. Plaintiff stated that he could carry one gallon of milk in his right hand, although it would be painful. *Id.* at 67.

Additionally, he noted that when his right arm is extended, it is "extremely difficult to close," and that has been the case since July of 2016. *Id.* at 68. He stated that he could go brief periods of time sitting without having to get up and move around, could stand or walk for about forty-five minutes at a time, and occasionally had difficulty getting up. *Id.* at 66-67. The ALJ considered Plaintiff's testimony and explained his reasoning to the extent it was discredited. Regarding Plaintiff's right arm, the ALJ found Plaintiff's stated limitations to be contradicted by the "noted improvement in [Plaintiff's] right elbow impairments" following the January 2018 surgery. *Id.* at 20. The ALJ noted the May 2018 orthopedic examination by Dr. Pallia following Plaintiff's January 2018 surgery, which showed that he was able to make a fist, straighten his fingers, and utilize a nearly full range of motion with his right arm. *Id.* at 20. Additionally, the ALJ considered the absence of "ongoing treatment for persistent symptoms or limitations related to [Plaintiff's] right upper extremity" following the January 2018 surgery. *Id.* at 20. At a physical examination from April 2021, Plaintiff showed "a full musculoskeletal range of motion with no neurological irregularities." *Id.* The ALJ also noted the February 2024 consultative examination, which showed no gross deformity, swelling, warmth, or tenderness in Plaintiff's right elbow and a "full pain-free range of motion," though the ALJ noted that this record was after Plaintiff's date last insured. *Id.* at 20. The ALJ determined that a limitation to frequently lifting and carrying only twenty pounds adequately accounted for the condition of Plaintiff's right arm, and the ALJ did not include a limitation on Plaintiff's ability to reach or grasp with his right arm. *Id.* The Court finds that the medical records cited by the ALJ are sufficiently clear and convincing to discount Plaintiff's statements. The ALJ set forth the medical records at odds with Plaintiff's testimony – the May 2018 examination notes, the absence of subsequent treatment, the April 2021 physical examination, and the February 2024 consultative examination and "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (finding that the ALJ did not err in rejecting the claimant's testimony that he could lift only 10 pounds

occasionally where a doctor opined that he could lift up to 10 pounds frequently); *see also* Diaz v. O'Malley, No. 23-3165, 2024 WL 4502113, at *1 (9th Cir. Oct. 16, 2024) (finding that the contradiction of medical records with plaintiff's testimony and evidence of improvement with treatment were "a sufficient basis for the ALJ to decline to credit plaintiff's testimony").

As to his mental capacity, Plaintiff stated that he has difficulty concentrating, paying attention, and staying focused "all the time." *Id.* While he reported a strong long-term memory, he said his short-term memory was "not too hot." *Id.* at 70. He reported getting paranoid and anxious around other people and having difficulty socializing. *Id.* at 70. He stated that he could go out on his own for tasks but that it was difficult. *Id.* at 74. He discussed a lack of motivation and fear. *Id.* at 74-75. *Id.* at 71. Plaintiff also stated that he must rest for five or six hours each day. *Id.* at 69.

The ALJ set forth "several reasons that the medical evidence of claimant's mental impairments does not support greater limitations in the residual functional capacity," despite Plaintiff's testimony. *Id.* at 21. The ALJ notes the results of Plaintiff's April 2021 mental status exam, which showed that Plaintiff was "oriented to person, place, and time; his attention/concentration were grossly intact; his memory was grossly intact; his insight and judgment were intact; he had an appropriate mood and affect; and he was described as emotionally stable." *Id.* The ALJ referred to multiple mental status examinations ranging from April 21, 2021 to December 16, 2021 wherein Plaintiff was reported to be polite, cooperative, alert, and oriented, with no memory deficits noted. *Id.* Additionally, the ALJ stated that no medical records referenced Plaintiff's reported need to rest five to six hours a day. *Id.* The ALJ also considered Plaintiff's mental status at the February 2024 consultative examination, which reflected intellectual functioning in the low average range. *Id.* While the February 2024 examination showed "very low" working memory and concentration and calculations, the ALJ concluded that in the context of the record as a whole, and considering that the examination took place more than two years after the date last insured, this did "not support a finding that [Plaintiff] had this same memory or

concentration issues prior to the date last insured." *Id.* Finally, the ALJ noted that between the alleged onset date and the date last insured, Plaintiff coached youth football and drove a car, both of which require concentration and memory. *Id.* at 22. Again, the Court finds that the ALJ sufficiently set forth the medical records at odds with Plaintiff's testimony.

Based on the foregoing analysis, the Court finds the ALJ provided "specific, clear and convincing" reasons for his credibility determination, by "enumerat[ing] the objective evidence that undermine[d] [Plaintiff's] testimony," *Kitchen*, 82 F.4th at 739, and "explain[ing] why the medical evidence is inconsistent with the claimant's subjective testimony." *Ferguson*, 95 F.4th at 1200 (emphasis in original). The Court is therefore persuaded that the ALJ did not "arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The Court finds the ALJ's credibility determination is adequately supported, and declines to "engage in second-guessing" that determination. *See id.* at 959; *see also Brown-Hunter*, 806 F.3d at 494 ("[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review.").

**4. Jobs matching the RFC**

Plaintiff argues that the ALJ erred at Step Five because he "failed to address [Plaintiff]'s inability to focus and concentrate as seriously limited due to chronic fatigue, pain, and mental limitations," and "all jobs require the worker to be focused and alert." Dkt. No. 10 at 7. This argument is duplicative of Plaintiff's Step Four arguments and fails to establish harmful error for the reasons set forth above.

Plaintiff further argues that the three identified jobs – dishwasher, store laborer, and commercial cleaner – are skilled jobs and therefore conflict with the RFC, which limits Plaintiff to unskilled work. *Id.* at 8. The ALJ's decision erroneously refers to these jobs as skilled, *see* AR at 27, but they are all unskilled by definition. Each of the jobs has an SVP of 2, which refers to the amount of time required by a typical worker to reach average performance in particular job. "Using the skill level definitions in 20 C.F.R. 404.1568 and 416.956, unskilled work corresponds to an SVP of 1-2." SSR 00-4p, 2000 WL 1898704, at *3. "[T]he regulatory definitions of skill levels are controlling." *Id.* Accordingly,

Plaintiff's argument that the ALJ erred by providing skilled jobs is without merit. The jobs provided by the ALJ are unskilled jobs and consistent with the RFC.

**B. Substantial Evidence Supports the ALJ's Decision**

Having found no legal error in the ALJ's treatment of the record or formulation of Plaintiff's RFC, the Court turns to the question of whether the RFC, and the ALJ's conclusion based on the RFC that Plaintiff was not disabled, is supported by substantial evidence. The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *See Ahearn*, 988 F.3d at 1115. Based on this review, the Court finds substantial evidence supports the ALJ's decision.

The record confirms Plaintiff is impaired by right elbow lateral epicondylitis and right elbow cubital tunnel syndrome status post right elbow lateral epicondylar debridement and release surgery. In July 2016, Plaintiff sought treatment for soreness and tenderness in his right elbow, which he reported had been going on for two months. AR at 365. A nerve study in September 2016 showed a mild right wrist median sensory neuropathy at the carpal tunnel region. *Id.* at 869. An MRI revealed a high-grade intrasubstance tear and tendinosis of the common extensor tendon of the lateral epicondyle, leading to Plaintiff's surgery in May 2017 for lateral humeral epicondylar release, debridement of the common extensor tendon and extensor carpi radialis brevis tendon, and osteotomy of the lateral humeral epicondyle in his right elbow. *Id.* at 869. In December 2017, Plaintiff reported numbness and tingling in his fingers and difficulty spreading his right hand. *Id.* at 870. The doctor reported that Plaintiff showed continued cubital tunnel syndrome and recommended a further surgery for a right elbow anterior subcutaneous transposition of the ulnar nerve and right arm placement of a long arm posterior splint, which Plaintiff underwent in January 2018. *Id.* at 882.

The record reflects an improvement in Plaintiff's condition following the January 2018 surgery. By February 2018, Plaintiff had no numbness or tingling in his fingers, and by May 2018, Plaintiff showed only "a little bit of tenderness" in the elbow caused by

hitting his elbow on some surface. *Id.* at 887, 897. The May 2018 examination reported that Plaintiff experienced "moderate discomfort" with forceful gripping, grasping, and pulling activities with his right hand and could make a fist and straighten his fingers. *Id.* at 897-98. The doctor opined that Plaintiff "has permanent work restrictions which preclude him from no heavy lifting or carrying greater than 15 lb and no forceful gripping and grasping with the right arm." *Id.* at 898. Plaintiff did not seek further treatment for his right arm following the second surgery. After Plaintiff's date last insured he continued to exhibit a limitation in his right arm strength. *See id.* at 990 (February 2024 orthopedic examination showing a grip strength of 10 pounds in his right hand, as opposed to 51 pounds in his left).

The record also confirms that Plaintiff has been diagnosed with ADHD, major depressive disorder, bipolar disorder, and generalized anxiety disorder. These conditions are noted in his medical records, and he is prescribed medication to treat them. *See, e.g.,* AR at 343, 357, 362, 366, 372, 412, 467, 496, 507. At a psychiatric exam in April 2021, Plaintiff reported that he had been experiencing more depression and had been experiencing anxiety at times. *Id.* at 568. As to his ADHD, Plaintiff reported that he had difficulty completing tasks, was unable to remember things, and could not focus on tasks. *Id.* However, the results of his mental status exam noted that Plaintiff was oriented to person, place, and time; had a grossly intact memory, attention, and concentration; had intact insight and judgment; and exhibited a linear and organized thought process. *Id.* at 571. At subsequent visits, medical records reflect that Plaintiff was alert and oriented and exhibited no memory deficits. *Id.* at 506, 511, 517, 525, 532. At the February 2024 psychological examination, Plaintiff reported that he could make independent decisions, manage his finances, make meals, and maintain basic grooming and hygiene on his own. *Id.* at 1004. The mental status exam showed that Plaintiff had clear, coherent, and organized thought processes; had cognitive functioning in the low average range; had an average fund of knowledge; and had memory, concentration, and calculation skills in the very low range. *Id.* at 1004. The examiner opined that Plaintiff could understand, remember and carry out

simple one or two step job task instructions with no impairment. *Id.* at 1005. He had mild impairments in his ability to do detailed and complex tasks, relate to others, and maintain concentration, attention, persistence and pace. *Id.* at 1006.

The record shows that Plaintiff's complaints of back pain were not consistent from the alleged onset date through the date last insured. At a doctor's visit on August 31, 2015, Plaintiff reported "chronic upper back and neck discomfort for the past 3-4 months," and said "he thinks it started around the same time that he was installing sheet metal and the wind caught a piece and twisted causing him to twist as well." AR at 373. The doctor noted that the pain was "most likely due to poor posture and chronic trapezius strain" and referred Plaintiff to physical therapy. *Id.* at 374. At a physical therapy evaluation in 2020, Plaintiff complained of dull aching pain in his low to mid back. *Id.* An x-ray showed "no acute osseous abnormality within the lumbosacral spine." *Id.* at 602. The medical record notes that Plaintiff had no functional mobility assistance needs and had no loss of range of motion in flexion or side bending. *Id.* at 603. At Plaintiff's February 2024 orthopedic consultation, he had no tenderness in his neck or spine and exhibited a full pain-free range of motion. *Id.* at 991.

The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's RFC, and the subsequent determination based on Plaintiff's RFC that he was not disabled. Accordingly, the ALJ's decision will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C.A. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.

## **CONCLUSION**

For the foregoing reasons, the Court concludes the ALJ followed the law and that his determination that Plaintiff is not disabled is supported by substantial evidence in the record. The undersigned accordingly **RECOMMENDS** that the District Court issue an order: (1) approving and adopting this Report and Recommendation in its entirety; (2)

denying Plaintiff's request for remand for an award of benefits; (3) affirming the decision of the Commissioner; and (4) directing that judgment be entered in the Commissioner's favor.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed by not later than **August 7, 2026**. Any response to a party's objections must be filed by not later than **August 21, 2026**. Failure to timely file objections may waive the right to raise those objections on appeal. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: July 23, 2026

Hon. David D. Leshner
United States Magistrate Judge